## THE DELAWARE.

(*Circuit Court, S. D. New York.* July 1, 1884.)

1. ADMIRALTY—BOAT IN TOW—COLLISION—TUG—NEGLIGENCE—PRESUMPTION.

   A boat in tow being powerless to help herself and wholly under the control of the tug, if it is brought into a collision, the occurrence presents an inference of negligence on the part of the tug.

2. SAME—FACTS OF THE CASE.

   The facts in the case of a powerful tug with a tow of 29 canal-boats, endeavoring to meet the tide, and meantime passing between an island and a steamboat at anchor, while doing which one of the boats in the tow is thrown by the tide against the anchored vessel and sunk, raise a presumption of negligence on the part of the tug which it must repel, when libeled.

3. SAME—TUG—DUTY—PERILS OF THE TIDE.

   A tug with a tow of boats in charge is in duty bound to anticipate the time and place which are perilous from the ordinary action of the tide.

In Admiralty.

*Beebe, Wilcox & Hobbs,* for libelant.

*Benedict Taft & Benedict,* for claimant.

WALLACE, J. The libelant's canal-boat, while being towed by the Delaware on the afternoon of July 13, 1877, was brought into collision with the steamer Carolina, then lying at anchor off Governor's island, in the bay of New York. The Delaware was a large and powerful tug. Her tow was composed of 29 canal-boats in six tiers, five in each tier except the last, which had four. The libelant's boat was the port boat of the fourth tier. The tug and tow reached the bay after the ebb-tide from the East river had been running about an hour and a half, and in order to avoid the force of the tide as much as was practicable, the tug made for Governor's island and proceeded northerly along the west shore within a prudent distance of from 200 to 300 feet, with her tow straightened out behind her, covering a distance of about 1,200 feet. As she reached the north shore of the island she encountered the tide which was running strong to the westward, and put her wheel to port for the purpose of heading to the tide. The Carolina was lying at anchor at a point about 700 feet west of the line of the tow, and between the north-westerly end of the island and Ellis island. As soon as the forward tiers of the tow felt the force of the tide, the whole tow began to swing rapidly to the westward and towards the Carolina. The Delaware put her wheel hard port and endeavored to swing her tow clear of the Carolina, but ineffectually; and the libelant's boat struck the Carolina and soon after sunk.

Upon this state of facts it is incumbent upon the Delaware to repel the presumption that she was negligent. As the libelant's boat was wholly under control of the tug and powerless to help herself, and was brought into collision with a vessel at anchor, the occurrence suggests an inference of negligence on the part of the tug which it devolves on her to repel. The immediate cause of the collision was the ordinary action of the tide at a place and in the manner which it was the duty of the tug to anticipate.

No fault is attributed to any of the boats of the tow. If the Carolina was anchored too near Governor's island to permit the tug to take her tow safely between the island and the steamer, in view of the tide which was to be encountered, the tug was in fault: either because those in charge neglected to observe the steamer in due season, or, if they observed her, because they attempted to proceed when they should have known the danger to the tow. Obviously, the only reasonable excuse which could be made for the tug is the one which is made; that is, that the Carolina came up astern of the tow, passed by, and without warning dropped anchor suddenly in such near proximity to the tow as to render a collision not only imminent, but so inevitable that, although the tug performed her whole duty in the emergency, the collision could not be avoided. This theory is fortified by the testimony of a large number of witnesses on the part of the claimant, and is refuted by positive testimony on the part of the libelant, to the effect that the Carolina had cast her anchor half an hour before the tug came abreast Castle William.

It will not be useful to recapitulate or attempt to analyze the statements of the witnesses; it must suffice to say that the impression derived from a careful reading of the proofs is cogent that the Carolina had been anchored where she lay for some time before those in charge of the tug noticed her presence; that their attention was in part occupied by their preparations to encounter the tide; that when they first noticed her they did not realize that she was in dangerous proximity to the tow; and it was not until the boats began to feel the strong drift of the tide, and began to swing rapidly in the direction of the steamer, that they realized the danger of the situation. Then it may have been too late to avoid the collision.

Upon any view of the facts it cannot be held that the tug was not guilty of negligence which contributed to the collision.

The decree of the district court is affirmed, with interest and costs of appeal.